# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DIANA LAPORTE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 2:22-cv-01226 |
| v. | ) | |
| | ) | |
| UNITY FAMILY SERVICES | ) | Chief Judge Mark R. Hornak |
| INCORPORATED, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION

**Mark R. Hornak, Chief United States District Judge**

Diana LaPorte ("Ms. LaPorte") filed this suit under the Americans with Disabilities Act, 42 U.S.C. § 12111 *et seq.* ("ADA"), alleging that her former employer, Unity Family Services ("Unity") and her former supervisor, Megan Aleandri ("Ms. Aleandri") unlawfully discriminated against her due to her disabilities. Ms. LaPorte specifically brought claims of denial of valuable consideration related to an employment agreement (Count I) and constructive discharge (Count II) against Unity and a claim of detrimental reliance against Ms. Aleandri (Count V).[1] (Pl's First Am. Compl., ECF No. 8.) Ms. LaPorte had also brought a claim for breach of contract (Count III) and a request for equitable relief in the form of specific performance (Count IV) but chose to withdraw these claims. (Pl's Br. in Opp'n, ECF No. 20, at 2.) Counts I and II specifically reference the ADA, the other remaining Counts arise under state law.

Pending before the Court is a Motion filed by Defendants to dismiss Count V for lack of ripeness and standing and to dismiss all Counts (I-V) for a failure to state a claim upon which relief

---

[1] The Court has federal question jurisdiction over Ms. LaPorte's claims against Unity arising under the ADA. 28 U.S.C. § 1331. The Court has supplemental jurisdiction over Ms. LaPorte's non-federal question claims against Ms. Aleandri because the claims are "so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367.

can be granted. (Defs.' Mot. to Dismiss, ECF No. 17.) The Court has considered the parties' moving, opposition, and reply papers, and for the reasons that follow, the Court GRANTS Defendants' Motion to Dismiss Counts III and IV with prejudice, as they were voluntarily abandoned; GRANTS Defendants' Motion to Dismiss Count II without prejudice; GRANTS Defendants' Motion to Dismiss Count V without prejudice; and DENIES Defendants' Motion to Dismiss Count I.

## I.    BACKGROUND

### A.   Factual Summary[2]

In November 2019, Ms. LaPorte began working at Unity as a Family Based Therapist[3] in Armstrong County, PA. (Pl's First Am. Compl., ECF No. 8, ¶ 8.) During her employment with Unity, Ms. LaPorte was supervised by Ms. Aleandri (Clinical Director), Daniel Holland (Supervisor), Regina Shoup (Supervisor), and Rachel Manfredo (Supervisor in Training). (*Id.* ¶ 9.)

When Ms. LaPorte was hired at Unity, she was seeking licensure to be a Professional Counselor. (*Id.* ¶ 10.) One of the requirements for this license is to complete 3,000 hours of Supervised Clinical Experience in no less than 2 years and no more than 6 years after obtaining a master's degree in counseling. (*Id.*) Before accepting the position with Unity, Ms. LaPorte told her interviewer (Mr. Holland) about this goal and expressed that she wanted to work for Unity "so she could obtain the clinical hours in pursuit of her licensure." (*Id.* ¶ 12.) In response, Mr. Holland told Ms. LaPorte that someone within Unity would be willing to supervise her clinical hours if she were

---

[2] This statement of facts is based on the allegations set forth in Plaintiff's First Amended Complaint (ECF. No. 8), which the Court must generally accept as true for purposes of ruling on the pending Motion to Dismiss. *Blanyar v. Genova Prods., Inc.*, 861 F.3d 426, 431 (3d Cir. 2017).

[3] Defendants state that Ms. LaPorte's correct title at the time she was hired was Family Based Mental Health Clinician. (ECF No. 18, at 1 n.2.)

to accept employment with Unity. (*Id.* ¶ 13.) Ms. LaPorte then accepted the position with Unity. (*Id.* ¶ 15.) A couple of weeks into her employment, Ms. LaPorte asked Ms. Aleandri to supervise Ms. LaPorte's clinical hours and Ms. Aleandri agreed. (*Id.* ¶ 16.) Between her hire in November 2019 and early June 2021, Ms. LaPorte accumulated about 2,553 clinical hours under Ms. Aleandri's supervision. (*Id.* ¶¶ 17, 31.) Ms. Aleandri's supervision of Ms. LaPorte's clinical hours ended in early June 2021. (*Id.* ¶ 31.)

In February 2021, Ms. LaPorte was diagnosed with OCD, generalized anxiety disorder, and major depressive disorder.[4] (*Id.* ¶ 7.) On or about August 9, 2021—after Ms. Aleandri's supervision of Ms. LaPorte's clinical hours had already ended (*see id.* ¶ 31)—Ms. LaPorte told Ms. Aleandri that Ms. Aleandri was triggering Ms. LaPorte's OCD by impinging upon her personal boundaries and that, as a result, Ms. LaPorte was struggling with obsessive thoughts. (*Id.* ¶ 18–19.) Ms. Aleandri thought Ms. Laporte was having "obsessive thoughts" about her (Ms. Aleandri) and responded that this made her concerned. (*Id.* ¶ 21.) About a week later in August 2021, Ms. Aleandri told Ms. LaPorte that she would no longer supervise any future clinical hours because she was concerned that Ms. LaPorte would later accuse her of disability discrimination if she did not sign off on her clinical hours. (*Id.* ¶¶ 22–23). Ms. Aleandri also stated that she would provide Ms. LaPorte with a log sheet of the total hours supervised up to that point. (*Id.* ¶ 22.)

Between August 25, 2021, and some time in December 2021, Ms. LaPorte was voluntarily admitted to a psychiatric hospital several times due to her mental health conditions. (*Id.* ¶ 27.) As

---

[4] Ms. LaPorte avers that these mental health disorders constitute disabilities pursuant to the Americans with Disabilities Act because "they can be permanent and/or chronic mental health conditions which affect at least one major life activity including, but not limited to, the periodic inability to concentrate due to intruding, unwanted, and seemingly unshakeable thoughts." (ECF No. 8, ¶ 7.) Taking the factual allegations about these disorders as true, the Court agrees at this juncture that these disorders could constitute as disabilities under the ADA. *See Wilson v. Lenington Home for the Aged*, 159 F. Supp. 2d 186, 198–99 (W.D. Pa. 2001) (explaining that depression can constitute as a disability under the ADA if it creates mental impairment that substantially limits an individual's major life activity).

a result of these hospitalizations, Ms. LaPorte was away from work for several weeks. (*Id.*) After Ms. LaPorte's first hospitalization ended in September 2021 her duties at work were modified. (*Id.* ¶ 28.) For example, Ms. LaPorte was only permitted to participate in team sessions with clients rather than one-on-one sessions. (*Id.*)

On December 14, 2021, Ms. Aleandri told Ms. LaPorte that she would not sign off on the 2,553 experiential hours that Ms. LaPorte had obtained under her supervision. (*Id.* ¶¶ 32–33.) Ms. Aleandri stated that she was retracting her promise to supervise Ms. LaPorte due to alleged complaints from clients of purported unprofessional behavior by Ms. LaPorte. (*Id.* ¶ 34.) On December 15, 2021, Ms. LaPorte resigned from her employment with Unity, stating that she did so in order to find a new job where she could earn the clinical hours necessary for her licensure. (*Id.* ¶ 39.)

### B. **Procedural Background**

On August 25, 2022, Ms. LaPorte filed this suit under the ADA alleging that Unity and Ms. Aleandri discriminated against her due to her disabilities. (ECF No. 1.) Ms. LaPorte filed her First Amended Complaint on September 8, 2022. (ECF No. 8.) Unity and Ms. Aleandri filed a Motion to Dismiss the First Amended Complaint (ECF No. 17) and an accompanying Brief (ECF No. 18) on November 17, 2022. Plaintiff filed a Brief in Opposition (ECF No. 20) on December 2, 2022, and a Supplement (ECF No. 21) on December 5, 2022. Defendants filed a Reply Brief on December 9, 2022 (ECF No. 22). The Motion to Dismiss (ECF No. 17) is ripe for disposition.

### II.   **LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6) a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not enough to survive a Rule

12(b)(6) motion. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Rather, a plaintiff's factual allegations must "raise a right to relief above the speculative level" and state a plausible claim for relief. *Twombly*, 550 U.S. at 555.

In reading the complaint, the court should "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. County of Allegheny*, 515 F. 3d 224, 233 (3d Cir. 2008)). "[C]ourts have an obligation in matters before them to view the complaint as a whole and to base rulings not upon the presence of mere words but, rather, upon the presence of a factual situation which is or is not justiciable." *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 184 (3d Cir. 2000) (quoting *City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 (3d Cir. 1998)).

The Third Circuit further guides lower courts to utilize a three-part framework in analyzing a 12(b)(6) motion. *See Malleus v. Geor*ge, 641 F.3d 560, 563 (3d Cir. 2011). First, the court shall "identify[] the elements of the claim." *Id.* Second, the court shall "review[] the complaint to strike conclusory allegations." *Id.* Third, the court shall "look[] at the well-pleaded components of the complaint and evaluat[e] whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Id.* If the facts alleged in the complaint "show" that the plaintiff is entitled to relief, the court should deny the motion to dismiss. *See Fowler*, 578 F.3d at 210–11.

In ruling on a motion to dismiss, the only documents a court may consider are "the complaint, attached exhibits, matters of public record, and undisputedly authentic documents not attached to the complaint if the complainant's claims are based on those documents." *Panthera Rail Car LLC v. Kasgro Rail Corp.*, 985 F. Supp. 2d 677, 683 (W.D. Pa. 2013) (citing *Mayer v.*

*Belichick*, 605 F.3d 223, 230 (3d Cir. 2010)). Finally, a court evaluating a motion to dismiss must "draw on its judicial experience and common sense." *United States ex rel. Bookwalter v. UPMC*, 946 F.3d 162, 177 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 679).

## III.   DISCUSSION

Defendants move to Dismiss all five Counts of the First Amended Complaint. (ECF No. 17, ¶ 5.) In response, Ms. LaPorte voluntarily abandoned Counts III and IV of the First Amended Complaint. (ECF No. 20, at 2.) Accordingly, the Court DISMISSES Counts III and IV with prejudice. The Court now considers the Defendants' Motion as to the remaining Counts.

### A.   Count I: Denial of Valuable Consideration Related to Employment Agreement Claim as Asserted Against Unity

Ms. LaPorte asserts under Count I that Unity violated the ADA by "intentionally discriminating against plaintiff by revoking its promise to sign off on clinical hours she completed during her employment because of her disability and/or perceived disability and/or her request for an accommodation for her disability." (ECF No. 8, ¶ 52.) Defendants move to dismiss this Count for failure to state a claim upon which relief may be granted, pursuant to Fed. R. Civ. P. 12(b)(6). (ECF No. 17, ¶ 6.) More specifically, Defendants assert that Ms. LaPorte did not plead sufficient facts to satisfy the third element of a *prima facie* case of disability discrimination. (ECF No. 18, at 16.)

To establish a *prima facie* case of discrimination, plaintiff must show that she: (1) is a disabled person within the meaning of the ADA; (2) is qualified to perform the essential functions of her job, with or without reasonable accommodations; and (3) has suffered an otherwise adverse employment decision as a result of discrimination. *Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 761 (3d Cir. 2004), *superseded by statute on other grounds as stated in Robinson v. First State Cmty. Action Agency*, 920 F.3d 182, 187–89 & n.30 (3d Cir. 2019); *Hatch v. Franklin*

6

*Cty.*, 755 Fed. Appx. 194, 198 (3d Cir. 2019). At this stage in litigation, "a plaintiff is not required to establish the elements of a *prima facie* case but instead, need only put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element[s].'" *Fowler*, 578 F.3d at 213 (quoting *Graff v. Subbiah Cardiology Associates, Ltd.*, No. 08–207, 2008 WL 2312671 (W.D. Pa. June 4, 2008)); *Phillips*, 515 F.3d at 234. Thus, the Court must determine whether Ms. LaPorte's factual allegations raise a reasonable expectation that discovery will reveal evidence of the elements necessary to establish a *prima facie* case disability discrimination.

For purposes of the Motion to Dismiss, Defendants do not contest that the first two prongs are sufficiently alleged. (ECF No. 18, at 16.) Defendants argue, however, that Ms. LaPorte has not sufficiently alleged the basis for the third prong required for *prima facie* case of discrimination under the ADA: that she suffered adverse employment action within the scope of her employment with Unity. (*Id.*)

Defendants aver that "revoking [the] promise to sign off on clinical hours she completed during her employment" (ECF No. 8, ¶ 52) is not an adverse employment action because "Unity had no authority to affect the supervisor/supervisee relationship for licensure, nor did such action affect Plaintiff's employment with Unity." (ECF No. 18, at 16.) Defendants point to the fact that 49 Pa. Code § 49.3(1)-(2), setting the qualifications for supervisors, requires that the supervisor be an *individual* holding a license as a professional counselor and since "[a]n entity is not a licensee and cannot be a supervisor" (*id.* at 17), Defendants assert that "Ms. Aleandri is expressly prohibited from delegating supervisory responsibilities to Unity." (*Id.*)

Defendants further assert that "Plaintiff's clinical experience with Ms. Aleandri was undertaken outside the scope of her employment with Unity as a Family Based Therapist." (*Id.*)

Defendants note that Ms. Aleandri was Ms. LaPorte's supervisor only with respect to Plaintiff's clinical experience to obtain licensure and assert that "Unity lacked any legal authority to direct Ms. Aleandri to undertake any action with respect to the supervisory relationship." (*Id.*) Thus, "any decisions or actions taken by Ms. Aleandri that affected Plaintiff's clinical experience, were not adverse actions *affecting her employment with Unity*." (*Id.* at 18 (emphasis added).) Defendants support this argument by noting that Ms. LaPorte's employment with Unity continued for six months after Ms. Aleandri's supervision ended. (*Id.*)

In response, Ms. LaPorte asserts that she did sufficiently allege facts that set forth a plausible case of disability discrimination. (ECF No. 20, at 9.) The adverse employment action Ms. LaPorte claims she suffered was her ability to earn clinical hours during her employment with Unity. (*Id.* at 10.) Ms. LaPorte highlights Third Circuit precedent stating that adverse employment actions include "decision[s] causing a significant change in benefits." (*Id.* (citing *Suders v. Easton*, 325 F. 3d 432, 434 (3d Cir. 2003), *vacated on other grounds by Pennsylvania State Police v. Suders*, 542 U.S. 129 (2004); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775, 790 (1998)).) Ms. LaPorte further argues that the ADA "is a federal anti-discrimination law which, like Title VII, invokes vicarious liability upon an employer for the wrongdoing of its supervisory employees." (*Id.* at 11–12 (citing *Vance v. Ball State Univ.*, 570 U.S. 421, 451 (2013) (Ginsburg, J., dissenting)).) Thus, Ms. LaPorte asserts that she fulfilled the pleading requirements because the factual allegations are that Ms. Aleandri, acting as her supervisor, discriminated against her and caused a significant change in her employment benefits by denying her supervision of her clinical hours. (*Id.* at 12.)

In their Reply Brief, Defendants assert that Unity is *not* vicariously liable for actions incident to the supervisory relationship between Ms. Aleandri and Ms. LaPorte. (ECF No. 22, at

6.) Defendants again point to the Licensed Professional Counselor licensure statute, which Defendants argue serves the purposes of "(1) establishing Ms. Aleandri (the supervisor) as a gatekeeper, exercising professional judgment to ensure only those individuals who are properly trained and equipped are licensed to provide unsupervised counseling services to the public, and (2) insulating the supervisor from influence of third parties seeking to control the relationship." (*Id.* at 6–7 (citing 49 Pa. Code §§ 49.1-49.80).) Moreover, Defendants assert that "[a]n employer will be vicariously liable for the conduct of an employee only if the conduct was committed while acting within the scope of her employment"—meaning that Ms. Aleandri's alleged actions must have been made in her employment capacity as Unity's Clinical Director. (*Id.* at 8 (citing *Burlington Indus.*, 524 U.S. at 756).) Defendants argue that it is not alleged that the supervising relationship between Ms. Aleandri and Ms. LaPorte was within the scope of Ms. Aleandri's employment and, without vicarious liability, Ms. LaPorte cannot claim that she suffered an adverse employment action by Unity for the actions of Ms. Aleandri. (*Id.*)

The Court concludes that, at this point in litigation, Ms. LaPorte has met the pleading standard and the Motion to Dismiss Count I should be DENIED. Specifically, the Court concludes that the questions relating to adverse employment action and vicarious liability—including whether the opportunity to earn supervised clinical hours constituted an employment benefit (especially in light of the alleged commitments made by Holland when Ms. LaPorte was first hired) and whether Ms. Aleandri's supervision of Ms. LaPorte's clinical hours was within the scope of Ms. Aleandri's employment—depend on certain factual findings that are not yet in the record. As stated, the only documents a court may consider at this stage are "the complaint, attached exhibits, matters of public record, and undisputedly authentic documents not attached to the complaint if the complainant's claims are based on those documents." *Panthera Rail Car*, 985 F. Supp. 2d at

683. Reviewing these documents and taking all allegations in the Complaint as true and in the light most favorable to the Plaintiff, the Court concludes that Ms. LaPorte has alleged sufficient facts—including that being able to earn supervised clinical hours if and while she worked at Unity, which was promised to her at the time of hire by Unity (ECF No. 8, ¶¶ 12–13) constitutes an employment benefit—to state a claim under Count I, and certainly create a "reasonable expectation that discovery will reveal evidence of the necessary element." *Fowler*, 578 F.3d at 213–14. And in any event, Ms. LaPorte pleads that the opportunity to earn the necessary credits was a benefit of her employment by Unity, promised to her by Unity, and that that benefit, so defined, was removed from her while she was employed by Unity.

Ms. LaPorte has also specifically alleged that she has qualifying disabilities, that she is qualified for her job, and that she experienced adverse employment action (losing the employment benefit of earning supervised clinical hours while a Unity Employee) due to illegal disability discrimination by her supervisor, Ms. Aleandri, who was employed by Unity. The dispute about whether the loss of this benefit constitutes an adverse employment action attributable to Unity through vicarious liability is also one wrapped up in additional facts that need to be developed on the record in discovery. For that reason, the Court DENIES the Motion to Dismiss Count I.

**B.   Count II: Constructive Discharge Claim as Asserted Against Unity**

Ms. LaPorte asserts under this Count that Unity violated the ADA "by intentionally discriminating against [her] by constructively discharging [her] by creating a hostile work environment." (ECF No. 8, ¶ 58.) Ms. LaPorte asserts that Unity created the hostile work environment "by refusing an important benefit promised to her (*i.e.* the ability to earn supervised clinical hours towards her licensure as a Professional Counselor), because she suffered from a disability and/or perceived disability and/or because she sought an accommodation for her

disability." (*Id.* ¶ 59.) Defendants move to dismiss this Count for failure to state a claim upon which relief may be granted, pursuant to Fed. R. Civ. P. 12(b)(6). (ECF No. 17, ¶ 6.) Specifically, Defendants assert that Ms. LaPorte has failed to sufficiently allege that she was constructively discharged by Unity (ECF No. 18, at 18.)

To establish a constructive discharge arising from disability discrimination in employment, plaintiff must show that the employer "knowingly permitted" the alleged conditions of discrimination in employment and that such conditions were "so intolerable that a reasonable person subject to them would resign." *Gross v. Exxon Office Sys. Co.*, 747 F. 2d 885, 888 (3d Cir. 1984). The Third Circuit "has identified various factors that support a claim of constructive discharge, including being 'threatened with discharge,' being 'urge[d] ... [to] resign or retire,' being demoted, suffering a reduction in pay or benefits, being 'involuntarily transferred to a less desirable position,' having job responsibilities 'altered,' and being 'given unsatisfactory job evaluations.'" *Lewis v. Univ. of Pennsylvania*, 779 Fed. Appx. 920, 922 (3d Cir. 2019) (quoting *Clowes v. Allegheny Valley Hosp.*, 991 F.2d 1159, 1161 (3d Cir. 1993)). As noted by the Defendants, the Third Circuit has also "expressly noted that 'a reasonable employee will usually explore . . . alternative avenues thoroughly before coming to the conclusion that resignation is the only option." (ECF No. 18, at 19 (citing *Clegg v. Falcon Plastics, Inc.*, 174 F. App'x 18, 27 (3d Cir. 2006)).)

Defendants assert that none of the factors identified by the Third Circuit, referred to as the *Clowes* factors, are alleged by Ms. LaPorte to support a claim of constructive discharge: for example, Ms. LaPorte does not allege that she was threatened with discharge, was urged to resign, was demoted, suffered a reduction in pay, was transferred to a less desirable position, etc. (*Id.* at 20.) Of the allegations Ms. LaPorte does raise—that Ms. Aleandri ended her supervision of Ms.

LaPorte due to Ms. LaPorte's disability—Defendants assert that they do not rise to the level of "severe and pervasive harassment" necessary to establish a hostile work environment claim. (*Id.* at 22.) In response, Ms. LaPorte asserts that "the retraction of the benefit of earning clinical hours created a hostile work environment given that her stated goal when hired was to earn clinical hours toward her licensure." (ECF No. 20, at 13.) Ms. LaPorte also asserts that "[n]o person on her predicament would have stayed employed by Unity"—which she says amounts to a constructive discharge. (*Id.*)

In their Reply Brief, Defendants highlight that Ms. LaPorte "failed to explore any alternative avenues to obtain the remaining 447 clinical hours after the alleged revocation of a promise to sign off on the 2,553 hours." (ECF No. 22, at 9.) Specifically, Defendants point to the fact that in the time after early June, 2021, when Ms. Aleandri ended her supervision, and before Ms. LaPorte resigned on December 15, 2021, Ms. LaPorte did not make any effort to find another supervisor at Unity and "made no inquiry to Unity about the effect of [Ms. Aleandri's] decision on her 'ability to obtain clinical hours.'" (*Id.*) Instead of exploring these alternative avenues, she continued to work for Unity between early June, 2021 (when Ms. Aleandri's supervision ended) and December 15, 2021 (when Ms. LaPorte "simply resigned"). (*Id.* at 9.)

Upon consideration of these arguments and taking all factual allegations in the First Amended Complaint as true, the Court concludes that Ms. LaPorte has failed to state a claim of a hostile work environment, let alone meeting the heightened bar required for stating a claim of constructive discharge. *See Wilson v. Blockbuster, Inc.*, 571 F.Supp.2d 641, 649 (E.D. Pa. 2008) (citing *Spencer v. Wal–Mart Stores, Inc.,* 469 F.3d 311, 317 n.4 (3d Cir.2006)) ("To prove constructive discharge, the plaintiff must demonstrate a greater severity or pervasiveness of harassment than the minimum required to prove a hostile working environment."). When a plaintiff

alleges a "compound hostile work environment constructive discharge" claim, the plaintiff must "make an additional showing beyond that required for a simple hostile environment claim." *Boandl v. Geithner*, 752 F. Supp. 2d 540, 573 (E.D. Pa. 2010) (citing *Clowes*, 991 F.2d at 1161). Ms. LaPorte asserts a compound claim—that she was constructively discharged due to a hostile work environment—thus, her allegations need to first give rise to the reasonable expectation that the elements of a hostile work environment can be established through discovery. *See Fowler*, 578 F.3d at 213–14.

A hostile work environment claim is actionable only if it is so severe or pervasive that it "alters the conditions of [the victim's] employment" and creates an "abusive working environment." *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 270 (2001) (quotation marks and internal citations omitted). A court must consider the "totality of the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Thomas v. Bronco Oilfield Servs.*, 503 F. Supp. 3d 276, 298 (W.D. Pa. 2020) (internal quotation marks omitted) (quoting *Miller v. Thomas Jefferson Univ. Hosp.*, 565 F. App'x 88, 93 (3d Cir. 2014)). The environment must be objectively hostile, not only hostile in the plaintiff's view. *See Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993); *Breeden*, 532 U.S. at 270–71. Finally, "[s]evere or pervasive" is disjunctive, meaning that a sufficiently extreme but nonetheless isolated incident can create a hostile work environment. *Castleberry v. STI Grp.*, 863 F.3d 259, 265 (3d Cir. 2017). The Third Circuit further guides that "the advent of more sophisticated and subtle forms of discrimination requires [the court to] analyze the aggregate effect of all evidence and reasonable inferences therefrom, including those concerning incidents of

facially neutral mistreatment, in evaluating a hostile work environment." *Cardenas v. Massey*, 269 F.3d 251, 261 (3d Cir. 2001).

Here, Ms. LaPorte's allegations supporting her alleged hostile work environment claim are the same allegations she relies on for the other claims in this case, including the intentional discrimination claim brough pursuant to the ADA (Count I). In this regard, it logically follows that Ms. LaPorte's hostile work environment/constructive discharge claim is, if actionable, nonetheless subsumed in her other claims of discrimination. Specifically, Ms. LaPorte alleged that (1) Ms. Aleandri told Ms. LaPorte that she would no longer supervise her clinical hours because she was concerned that Ms. LaPorte would later accuse her of disability discrimination if she did not sign off on her clinical hours (ECF No. 8, ¶ 22–23); (2) After Ms. LaPorte's first hospitalization ended in September 2021, she was only permitted to participate in team sessions with clients rather than one-on-one sessions (*id.* ¶ 28); and (3) On December 14, 2021, Ms. Aleandri told Ms. LaPorte that she would not sign off on the 2,553 hours that Ms. LaPorte had already obtained under her supervision due to alleged complaints from clients of purported unprofessional behavior (*id.* ¶ 32–34). Ms. LaPorte asserts that she resigned from employment the next day. (*Id.* ¶ 39.)

Even if proven true, the Court concludes that these allegations—standing alone or in aggregate—cannot plausibly establish a hostile work environment claim. Specifically, the discriminatory conduct alleged is not *frequent* in the sense that this incident only happened once with one supervisor, and, further, the discriminatory conduct does not involve physical threats, humiliating or offensive language, and does not interfere with Ms. LaPorte's work performance in that she could continue doing her job. *Cf. Abramson v. William Paterson College of N.J.*, 260 F.3d 265, 279–80 (3d Cir. 2001) (finding that pervasive and severe conduct, including unprecedented monitoring of the plaintiff's conferences and absences; charging the plaintiff a sick day for taking

off on a Jewish holiday; criticizing the plaintiff for lack of availability during the Sabbath; and scheduling meetings during Jewish holidays, was so harmful that it interfered with the plaintiff's employment conditions). Further, Ms. LaPorte does not allege that she was subjected to targeted discriminatory conduct such as offensive comments or name calling. *Cf. Prettyman v. LTF Club Operations Co.*, No. 18-00122, 2018 WL 5980512, *6 (E.D. Va. Nov. 13, 2018) (Describing how the plaintiff's co-workers directly called the plaintiff a "Jewish American Princess" and subjected her to several other derogatory comments about "Jewish Money"); *Bronco Oilfield Services*, 503 F. Supp. 3d at 288–96 (Describing how the plaintiff's co-workers repeatedly directed the n-word at the plaintiff, in some instances when the plaintiff was alone with the co-worker who used the racial slur).

Having failed to meet the lower (but nonetheless significant) burden of establishing a hostile work environment, the Court concludes that Ms. LaPorte has also failed to sufficiently create a plausibility that she was constructively discharged due to the hostile work environment. Specifically, Ms. LaPorte has not raised any allegations that could establish that Unity "knowingly permit[ted] conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign." *See Spencer,* 469 F.3d at 317 n. 4. Thus, the Court concludes that Ms. LaPorte has not reached the higher bar required to establish a claim of constructive discharge under this construct.

While Ms. LaPorte appears to seek to allege a compound hostile work environment constructive discharge claim here and for the reasons noted falls short of the mark, the Third Circuit has recognized that "[a] plaintiff can prove constructive discharge independent of hostile work environment based on actions of a supervisor." *Boandl*, 752 F. Supp. 2d at 573 (citing *Stremple v. Nicholson*, 289 Fed. Appx. 571, 573—74 (3d Cir. 2008) (affirming a decision to reject

a hostile work environment claim but concluding that a constructive discharge claim was stated where the plaintiff was "forced out of his position")). Here, Ms. LaPorte's allegations based on Ms. Aleandri's actions alone (that is outside of a viable "hostile environment" setting) would need to show that the decision not to sign off on her previously earned hours "so degraded [Ms. LaPorte's] professional life that a trier of fact could conclude that [she] was constructively discharged." *Boandl*, 752 F. Supp. 2d at 574. As currently alleged, the actions by Ms. Aleandri do not support a claim of constructive discharge based on Ms. Aleandri's actions alone. Specifically, the refusal to sign off on the earned clinical hours does not appear to meet any of the *Clowes* factors identified by the Third Circuit: Ms. LaPorte's supervisors did not demote her, reduce her pay, urge her to resign, threaten her with termination, transfer her to a different position, or give her unsatisfactory job evaluations. *See Clowes*, 991 F.2d at 1161.

Beyond the fact that Ms. Aleandri's actions as pled do not meet the *Clowes* factors, the Court also notes that Ms. LaPorte does not allege any effort on her part to explore alternative avenues before resigning, particularly since she pleads that she resigned only one day after she says that she was informed that Ms. Aleandri would not sign off on the hours already "earned" via supervision. Nor does she plausibly allege that it would have been pointless for her to have explored alternatives to resignation with Unity before her doing so. This is particularly relevant since presumably, by her resigning without taking any efforts within Unity to secure an alternative "sign off" on the previously supervised hours, or to enlist Unity management in resurrecting the sign off by Ms. Aleandri, she cemented "losing" those hours by leaving Unity.

Since Third Circuit law places significance on this point, the lack of any allegations that Ms. LaPorte did explore alternative avenues before resigning makes it far less plausible that she will be able to make out a valid claim of constructive discharge. *See Clowes*, 991 F.2d at 1161

("As other courts of appeals have noted, a reasonable employee will usually explore such alternative avenues thoroughly before coming to the conclusion that resignation is the only option."). That said, while it appears that Ms. LaPorte would have a high bar to surmount to plausibly allege the requisite elements for a constructive discharge claim in the overall circumstances that she has already pled, the Court cannot conclusively say that it would be futile for her to do so. In that light, and for the reasons stated above, the Court GRANTS the Defendants' Motion to Dismiss Count II, but DISMISSES Court II without prejudice and with leave to amend.

### C.  Count V: Detrimental Reliance Claim as Asserted Against Ms. Aleandri

Ms. LaPorte asserts under this Count that Ms. Aleandri "unjustly revoked her promise to supervise plaintiff's hours and support submission of those hours to the Board of licensure" and that Ms. LaPorte had detrimentally relied on this promise when she "remained employed by defendant Unity for over two years with the expectation that she would have an opportunity [to] earn significant supervised clinical hours towards the 3,000 supervised clinical hours she was required to complete." (ECF No. 8, ¶¶ 77–79.) Defendants move to dismiss this Count for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and, alternatively, for failure to state a claim upon which relief may be granted, pursuant to Fed. R. Civ. P. 12(b)(6). (ECF No. 17, ¶ 6.)

#### a)        Subject Matter Jurisdiction

First, Defendants assert that Count V of the First Amended Complaint lacks both ripeness and standing. (ECF No. 17, ¶ 11.) Federal Rule of Civil Procedure 12(b)(1) provides that a party may bring a motion to dismiss for lack of subject matter jurisdiction. A motion to dismiss for want of standing is also properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter. *See St. Thomas–St. John Hotel & Tourism Ass'n v. Gov't of the U.S. Virgin Islands*, 218

F.3d 232, 240 (3d Cir. 2000) ("The issue of standing is jurisdictional."); *Kauffman v. Dreyfus Fund, Inc.*, 434 F.2d 727, 733 (3d Cir. 1970) ("[W]e must not confuse requirements necessary to state a cause of action ... with the prerequisites of standing."). In considering Defendants' Motion in these regards, , the Court must accept as true all material allegations set forth in the complaint, and must construe those facts in favor of the nonmoving party. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Storino v. Borough of Point Pleasant Beach*, 322 F.3d 293, 296 (3d Cir.2003).

### 1.   Legal Standard for Standing and Ripeness

On a motion to dismiss for lack of standing, the plaintiff "'bears the burden of establishing' the elements of standing, and 'each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation.'" *FOCUS v. Allegheny County Court of Common Pleas*, 75 F.3d 834, 838 (3d Cir.1996) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). However, "general factual allegations of injury resulting from the defendant's conduct may suffice." *Lujan*, 504 U.S. at 561. Standing requires three elements: (1) "the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent, not 'conjectural' or 'hypothetical''"; (2) there must be "a causal connection between the injury and the conduct complained of"; and (3) it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan*, 504 U.S. 555, 560–61 (1992) (internal citations omitted).

As for ripeness, the Supreme Court articulated a two-step test for determining whether a claim is ripe—meaning that it is "of sufficient immediacy and reality" to justify judicial resolution, *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)— (1) "the fitness of

the issues for judicial decision," and (2) "the hardship to the parties of withholding court consideration." *See Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967).

### 2. Discussion

Defendants argue that Count V is not ripe for adjudication because "Plaintiff has yet to perform conditions precedent" to the agreement, and, thus, no injury has occurred yet. (ECF No. 18, at 6.) More specifically, Defendants submit that "[i]n order to obtain a licensure, (which Ms. LaPorte seeks) the supervisee (Ms. LaPorte) must submit an application to the State Board of Social Workers, Marriage and Family Therapists and Professional Counselors ("Board"), which shall include supervisor's verification of the supervisee's completion of 3,000 clinical hours." (*Id.* at 6–7.) Defendants aver that "Ms. Aleandri's responsibility to verify Plaintiff's clinical hours cannot arise until Plaintiff has completed the 3,000 hours of clinical experience and prepared an application for licensure to the Board." (*Id.* at 7.) Until that time, Defendants submit, Ms. LaPorte's claim against Ms. Aleandri is unripe. For the same reason, Defendants also argue that Plaintiff does not have standing to bring this claim because Plaintiff "has yet to suffer an injury" and has not shown that "an injury is imminent." (*Id.*)

In response, Ms. LaPorte argues that due to Defendants' actions, she will be forced to "repeat 2,553 clinical hours which took her 1.5 years to complete at Unity" in order to be at the same point in seeking her licensure as she was before Defendants' actions. (ECF No. 20, at 15.) Thus, Ms. LaPorte argues that the delay in advancing her career goals and the consequential affect on her future plans constitutes an injury in fact for standing purposes and makes her claim ripe. (*Id.*)

In their Reply Brief, Defendants again argue that Ms. LaPorte has not alleged a concrete or particularized injury that is actual or imminent. (ECF No. 22, at 5.) Specifically, Defendants

argue that Plaintiff has "only" alleged as her injury that she needs to now plan to complete 3,000 hours of supervised experience instead of 447 hours, which Defendants assert is not a redressable injury. (*Id.*) Defendants aver that any intervention by this Court "relies on entirely speculative circumstances because if [Ms. LaPorte] fails to complete any of the remaining hours prior to her statutory deadline, any harm realized by the Plaintiff is of her own accord and not caused by Ms. Aleandri, rendering moot any decision by this Court." (*Id.*)

The Court agrees with Ms. LaPorte on this point and concludes that the Court has subject matter jurisdiction over this claim. Based on the First Amended Complaint, Mr. Holland expressly agreed that Ms. LaPorte's could earn 3,000 supervised clinical hours while employed at Unity and that a Unity employee would supervise and sign off on those hours. (ECF No. 8, ¶ 13.) As a result of this agreement, Ms. LaPorte worked at Unity for over a year and a half and in that time earned 2,553 clinical hours. (*Id.* ¶¶ 17, 31) If Ms. LaPorte had not accepted employment with Unity, she could have sought out another job that allowed her to earn those hours. Thus, the allegation that Ms. Aleandri refused to sign off on the 2,553 does result in a concrete and tangible harm to Ms. LaPorte—namely, the loss of 2,553 clinical experiential hours. (*Id.* ¶¶ 32–33.)

Thus, the Court concludes that Ms. LaPorte has sufficiently established that she suffered an injury in fact (the loss of 2,553 clinical hours earned pursuant to an agreement made at the time of hire) that is concrete, particularized, and not hypothetical in that Ms. Aleandri did refuse to sign off on the hours and, as a result of this action, Ms. LaPorte necessarily will need to repeat the 2,553 hours in order to get back to the place she was in before this alleged conduct. *See Lujan*, 504 U.S. at 560–61. Ms. LaPorte has also sufficiently alleged a causal connection between this injury and the disability discrimination she alleges motivated Ms. Aleandri's refusal to sign off on her hours, and Ms. LaPorte has established that this injury can be redressed by a favorable decision by the

Court by putting her back in the position she would have been if Ms. Aleandri did not refuse to sign off on these earned hours, or otherwise compensating her for the injury caused by what she effectively alleges was the loss of a year and a half of her life. *See id.* Finally, the Court also concludes that for these same reasons, the impact to Ms. LaPorte is current and the claim is not unripe. Thus, the Court concludes Ms. LaPorte has standing and that the claim is ripe and thus DENIES Defendants' Motion to Dismiss due to lack of subject matter jurisdiction.

**b)**      **Failure to State a Claim**

Defendants argue that if Count V is not dismissed for lack of subject matter jurisdiction, it must be dismissed for failure to state a claim. (ECF No. 17, ¶ 6.) Specifically, Defendants argue that "Plaintiff cannot establish detrimental reliance as to Ms. Aleandri, where the alleged promise to supervise was made by Unity, not Ms. Aleandri, and where Unity has no authority to direct the supervisory relationship." (ECF No. 18, at 12.) The parties agree that the elements of a detrimental reliance claim (also known as promissory estoppel) are (1) a promise to a promisee, (2) which the promisor should reasonably expect will induce action by the promise, (3) which does induce action, and (4) which should be enforced to prevent injustice to the promise. (ECF No. 18, at 11 (citing *Fedun v. Mike's Café, Inc.*, 204 A.2d 776, 782 (Pa. Super. 1964)); ECF No. 20, at 15 (citing *Burton Imaging Grp. v. Toys "R" Us, Inc.*, 502 F. Supp. 2d 434, 438 (E.D. Pa. 2007)).)

Here, Ms. LaPorte alleges that (1) Ms. Aleandri made a promise to "supervise [Ms. LaPorte's] clinical hours in furtherance of her licensure to be a Professional Counselor" (ECF No. 8, ¶ 76); (2) that Ms. Aleandri "expected that her promise would induce action on the part of [Ms. LaPorte] including but not limited to working for defendant Unity and staying employed with defendant Unity . . ." (*id.*, ¶ 77); (3) that this promise did induce Ms. LaPorte to "remain[] employed by defendant Unity for over two years . . ." (*id*, ¶ 78); (4) that Ms. Aleandri "unjustly

21

revoked her promise" and this "injustice can only be avoided by enforcing [the] promise." (*id*, ¶¶ 79–81.) Defendants assert that even when taken as true, these allegations are not sufficient to establish a claim of detrimental reliance because "it was Unity, not Ms. Aleandri, that allegedly made a promise as to clinical supervision." (ECF No. 18, at 12.)

More specifically, Defendants highlight that Ms. LaPorte alleges that Unity made the promise that "'she *would be able to* have *someone* at [D]efendant Unity's facility supervise and verify' her clinical experience for the purpose of obtaining licensure." (*Id.* (quoting ECF No. 8, ¶ 65) (emphasis in original).) Defendants first assert that this statement does not constitute a promise related to employment, but rather "merely suggests that Plaintiff's pursuit of licensure would not conflict with her employment obligations to Unity." (*Id.*) Defendants then assert that even if this this (rather strained) interpretation of the relevant statement did constitute a bargained-for-exchange, "such agreement creates no legal obligation for Ms. Aleandri to perform in accordance with the agreement because Ms. Aleandri was not acting as an agent of Unity, nor was she a party to the contract." (*Id.* at 13.) Defendants aver that the agreement between Unity and Ms. LaPorte "cannot inure a duty upon Ms. Aleandri" and that Ms. Aleandri had "the authority to severe the supervisory relationship if a conflict of interest ar[ose]." (*Id.*) Finally, Defendants assert that Ms. LaPorte "failed to allege that by accepting employment with Unity, based on the promise of clinical supervision, she abandoned other comparable employment opportunities." (*Id.* at 13–14 (citing *Weavertown Transp. Leasing, Inc. v. Moran*, 834 A.2d 1169, 1175 (Pa. Super. 2003)).)

Defendants also assert that this Count should be dismissed because the Court "cannot direct specific performance where it would require Ms. Aleandri to violate her statutory and ethical duties." (*Id.* at 8.) Specifically, Defendants point to the tenets of the American Counseling Association (ACA), which imputes an ethical duty to Ms. Aleandri to be "'accurate, honest, and

objective' in reporting professional activities." (*Id.* at 9 (citing ACA Code § C.6.b).) Defendants aver that ordering Ms. Aleandri to reinstate a promise to sign off on Ms. LaPorte's hours and continue to supervise her in future clinical hours, would undermine a supervisor's statutory authority to terminate the supervisory relationship. (*Id.* (citing 49 Pa. Code § 49.14(6)).)

Defendants finally assert that Count V should be dismissed because Ms. LaPorte "cannot establish a right to specific performance for relief because [she] has yet to satisfy conditions precedent to Ms. Aleandri's certification of the clinical hours." (*Id.* at 14 ("It is well established that the party desiring to enforce performance must regard her 'part of the contract as a condition precedent,' and must 'perform or offer performance' in order to proceed to enforce the contract through specific performance." (quoting *Cohn v. Weiss*, 51 A.2d 740, 744 (Pa. 1947))).) Similar to the ripeness argument, Defendants assert that "Plaintiff seeks specific performance to occur at an unspecified and indefinite time in the future, 'when Plaintiff submits proof of her clinical hours to the Board for licensure.'" (*Id.*)

In her Response Brief, Ms. LaPorte only addresses the detrimental reliance claim in response to the Motion to Dismiss for lack of subject matter jurisdiction and does not directly address Defendants' arguments regarding the Motion to Dismiss Count V for failure to state a claim. (*See* ECF No. 20.)

Having considered the allegations in the First Amended Complaint and all the arguments asserted by Defendants, the Court reaches the following conclusions. First, the Court concludes that the question of whether this Count would be requiring Ms. Aleandri to violate her ethical duty depends on the determination of factual issues regarding Ms. Aleandri's authority as a supervisor and her basis for refusing to sign off on the hours performed and to supervise future hours. These factual disputes would need to be developed and resolved through discovery. Next, the Court

concludes that for the reasons previously articulated, Ms. Aleandri's refusal to sign off on clinical hours that have already been completed makes it such that Ms. LaPorte will necessarily need to repeat 2,553 hours to obtain her licensure. There are factual allegations sufficient to support the conclusion that the agreement between Ms. Aleandri and Ms. LaPorte was that Ms. LaPorte would complete clinical hours and Ms. Aleandri would supervise and sign off on completed hours. (ECF No. 8, ¶¶ 16–17.) That said, the fact that Ms. LaPorte completed some clinical hours means that she has fulfilled the condition precedent to the agreement at least to that extent. Again, any factual issue regarding Ms. Aleandri's authority and basis to refuse signing off on completed clinical hours would need to be developed in discovery. Thus, the Court concludes that these arguments do not warrant a dismissal for failure to state a claim.

The Court does agree with Defendants that based on the allegations in the First Amended Complaint, Ms. Aleandri was not the one who made the promise connecting supervision of clinical hours to employment with Unity. As alleged, before accepting the position with Unity, Ms. LaPorte informed Mr. Holland, her interviewer, that she wanted to work for Unity "so she could obtain the clinical hours in pursuit of her licensure." (ECF No. 8, ¶ 12.) In response, Mr. Holland told Ms. LaPorte that "someone" within Unity would be willing to supervise her clinical hours if she were to accept employment with Unity. (*Id.* ¶ 13.) Relying on this statement, Ms. LaPorte accepted employment with Unity. (*Id.* ¶ 15.) Based on these allegations, it has not been shown that Ms. Aleandri was in any way personally involved in—or even aware of—this agreement and, thus, Ms. LaPorte's reliance on this promise cannot be attributed to Ms. Aleandri.

Moreover, as alleged, Ms. LaPorte did not ask Ms. Aleandri to supervise her clinical hours until a couple of weeks into her employment. (*Id.* ¶ 16.) Ms. LaPorte alleges that Ms. Aleandri "agreed to do so as represented by Mr. Holland" but does not specifically allege that Ms. Aleandri

in anyway tied her willingness to Ms. LaPorte's employment with Unity. (*Id.*) Thus, there are not sufficient factual allegations to support the claim that Ms. Aleandri "expected that her promise would induce action on the part of [Ms. LaPorte] including but not limited to working for defendant Unity and staying employed with defendant Unity . . ." (ECF No. 8, ¶ 77) nor the claim that Ms. Aleandri's promise did induce Ms. LaPorte to "remain[] employed by defendant Unity for over two years (*id.*, ¶ 78). But, the Court cannot conclusively say that these shortcomings could not be cured/cleared up by further amendment. Thus, the Court DISMISSES this Count without prejudice.

### IV.    <u>LEAVE TO AMEND</u>

The Court dismisses Count II and Count V without prejudice because, under Third Circuit precedent, "district courts must offer amendment [in civil rights cases]—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile." *Mulllin v. Balicki*, 875 F.3d 140, 151 (3d Cir. 2017) (quoting *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007)). Although Defendants argue that "[f]urther amendment by Plaintiff would be futile as there are no facts that could give rise to any claim" the Court concludes that the circumstances are not such that amendment of these Counts would necessarily be futile—such as when the complaint would facially be time-barred, *see Jackson v. Washington Auto Mall*, No. 20-cv-00367, 2020 WL 1974764, at *1 & n.1 (W.D. Pa. Apr. 24, 2020)—or that allowing amendment would be inequitable. Thus, the Court concludes that Count II and Count V are dismissed without prejudice and Plaintiff IS GRANTED leave to amend if she so desires, and believes that she can plausibly do so under prevailing law. But, in light of the facts that Ms. LaPorte has already amended once, and did not seek leave to amend in the face of the Motion to Dismiss, the Court also concludes that

this opportunity will be the last opportunity for such amendatory activity, absent a change in prevailing law or the discovery of facts not now known or knowable.

**V.**      **CONCLUSION**

For the reasons set out above, the Court DENIES Defendants' Motion to Dismiss Count I; GRANTS Defendants' Motion to Dismiss Counts II and V of the First Amended Complaint; and GRANTS Defendants' Motion to Dismiss Counts III and IV, as they have been voluntarily abandoned. Counts III and IV are dismissed with prejudice. Counts II and V are dismissed without prejudice and Plaintiff may file an Amended Complaint as to these Counts within twenty-one (21) days of the date of this Order, if she so desires and can plausibly do so under prevailing law. If such is not so filed, the dismissals of Count II and Count V shall then be converted to dismissals with prejudice without further notice or Order.

s/ Mark R. Hornak_____
Mark R. Hornak
Chief United States District Judge

Dated:  June 21, 2023

26